**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| JODI H.,[1] | : | Case No.  3:20-cv-00145 |
| | : | |
| Plaintiff, | : | Magistrate Judge Caroline H. Gentry |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff filed an application for Disability Insurance Benefits and Disabled

Widow's Benefits in September 2016. Her claims were denied initially and upon

reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge

(ALJ) concluded that Plaintiff was not eligible for benefits because she is not under a

"disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's

request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter for benefits, or in the alternative, for

further proceedings. The Commissioner asks the Court to affirm the ALJ's non-disability

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

decision. The case is before the Court upon Plaintiff's Statement of Errors (Doc. 11), the Commissioner's Memorandum in Opposition (Doc. 13), Plaintiff's Reply (Doc. 14) and the administrative record (Doc. 10).

## II.    BACKGROUND

Plaintiff asserts that she has been under a disability since September 14, 1998. She was thirty-three years old on the alleged disability onset date. Accordingly, she was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c).[2] She has at least a high school education. *See* 20 C.F.R. § 404.1564(b)(4).

The evidence of record related is summarized in the ALJ's decision (Doc. 10-2, PageID 55-73), Plaintiff's Statement of Errors (Doc. 11), the Commissioner's Memorandum in Opposition (Doc. 13), and Plaintiff's Reply (Doc. 14). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Disabled Widow's Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental

---

[2] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Disabled Widow's Benefits Regulations.

impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." (*Id.*)

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which

3

the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV.   FACTS

### A.   The ALJ's Findings of Fact

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1:     Plaintiff engaged in substantial gainful activity during the following periods: 2006, 2008, 2009, and the first 11 months of 2010.

4

> However, there has been a continuous 12-month period(s) during which she did not engage in substantial gainful activity.

Step 2:    She has the severe impairment of history of anterior cervical discectomy, substance abuse, posttraumatic stress disorder, panic disorder, and major depression.

Step 3:    She does not have an impairment or combination of impairments that met or medically equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:    Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of medium work … except that she can frequently crawl, reach overhead with both upper extremities, and climb ladders, ropes, and scaffolds.  She should not be exposed to environmental hazards such as unprotected heights, dangerous machinery, or commercial driving.  She can perform simple routine repetitive tasks but not at a fast production rate pace and with no strict production rate or quotas.  She would be able to adapt to a work setting with routine changes.  She can occasionally interact with coworkers and supervisors.  She should not interact with the general public.

She is unable to perform her past relevant work.

Step 5:    Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

(Doc. 10-2, PageID 58-73.)  These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.*, PageID 73.)

## B.    Treating Physician Abdullahi Mubarak, M.D.

Treating physician Abdullahi Mubarak, M.D., was Board Certified in Family Practice from 1985 to 2000, and became certified by the American Society of Addiction

Medicine in 1990. (Doc. 10-8, PageID 685.) Dr. Mubarak began treating Plaintiff in
August 2015 for opiate addiction. (Doc. 10-8, PageID 595.) He initially diagnosed her
with opioid type dependence, alcohol abuse, and post-traumatic stress disorder. (*Id*.) He
later also diagnosed her with cannabis dependence, panic disorder without agoraphobia,
and spondylosis. (*Id*. at PageID 600.)

In November 2018, Dr. Mubarak opined that it was not reasonably probable that
Plaintiff would be able to be prompt and regular in attendance, withstand the pressure of
meeting normal standards of work productivity and accuracy, demonstrate reliability,
complete a normal workday and workweek, or perform at a consistent pace. (Doc. 10-8,
PageID 686-87.) He did not explain the basis for these opinions. (*Id*.) Dr. Mubarak did
state that Plaintiff was "[d]isabled psychologically after her husband's death" (*id*. at
PageID 690), which happened in 2016. He did not identify any physical restrictions or
limitations. (Doc. 10-8, PageID 687-91.)

On the same date, Dr. Mubarak filled out a mental impairment questionnaire.
(Doc. 10-8, PageID 692-95.) He identified the following signs and symptoms: sleep
disturbance, mood disturbances, emotional lability, decreased energy, intrusive
recollections of a traumatic experience, generalized persistent anxiety, feelings of guilt/
worthlessness, hostility, and irritability. (*Id*. at 693.)

Dr. Mubarak opined that Plaintiff would be off task during twenty percent or more
of a typical workweek, and would be absent from work three times a month. (*Id*.) He
opined that Plaintiff was markedly limited in her ability to relate to and work with

6

supervisors, coworkers and the public, and in her ability to regulate her emotions and control her behavior in a work setting. (Doc. 10-8, PageID 694.) He opined that Plaintiff was moderately limited in her ability to focus attention on work activities and to stay on task at a sustained rate. (*Id*.) He opined that Plaintiff was mildly limited in her overall ability to learn, recall, or use information to perform work activities. (*Id*.) Dr. Mubarak did not provide an explanation for his opinions. (*Id*. at PageID 692-95.)

The ALJ recognized that Dr. Mubarak was a treating source but rejected his opinion after finding that it was not entitled to any significant weight, explaining:

> [Dr. Mubarak] does not provide sufficient clinical and laboratory data to support his conclusion. His treatment notes, discussed above, contain absolutely no psychological assessments or observations of the claimant's mental status, though he does report that he provided a physical examination on each occasion, so the basis of his opinions is unclear. It is presumed that he would have remarked on any mental abnormalities that could be identified by a casual observer, though he did not perform any formal assessments, however he did not do so. His opinion about the claimant's mental impairments falls outside his area of professional training and specialization, as he is not a psychiatrist or psychologist, merely a prescriber of opiate agonist medication.

(Doc. 10-2, PageID 70.) The ALJ emphasized that Dr. Mubarak did not identify training or certification in the area of mental illness, other than addiction. (*Id*., PageID 69.)

**C.     Consultative Examiner Mary Ann Jones, Ph.D.**

Clinical psychologist Mary Ann Jones, Ph.D. conducted a consultative evaluation of Plaintiff. (Doc. 10-7, PageID 544-51.) Dr. Jones diagnosed Plaintiff with post-traumatic stress disorder, major depression, and opioid abuse (in three-month remission). (*Id*. at PageID 550.) Dr. Jones opined that Plaintiff could understand, remember, and

7

carry out instructions consistent with a low range of intelligence, but may do so inconsistently due to "questionable emotional stability and recent cessation of drug use." (*Id*.) Dr. Jones opined that Plaintiff's psychological symptoms would negatively impact her ability to sustain attention and concentration, and to maintain adequate persistence and pace. (*Id*.) Based on Plaintiff's reported difficulties in getting along with others, Dr. Jones opined that her ability to interact appropriately with coworkers and supervisors would be limited. (*Id*.) She also opined that Plaintiff would be limited in her ability to tolerate stress in the workplace. (*Id*. at PageID 550-51.)

The ALJ concluded that Dr. Jones' opinion is entitled to some weight:

> Unfortunately, Dr. Jones does not indicate the nature and severity of these limitations [regarding interacting with coworkers and supervisors], which appear to be based primarily on the claimant's subjective report of her history…. Dr. Jones' opinion is given some weight, as it is the result of her own observations, a clinical interview, and a mental status evaluation, though it appears to be heavily weighted towards the claimant's subjective reports, and is supported by very limited collateral information.

(Doc. 10-2, PageID 67.) Noting that Plaintiff gave Dr. Jones inaccurate information about the status of her substance abuse addictions, the ALJ also found that this misinformation would negatively impact Dr. Jones' ability to make an accurate assessment of Plaintiff's functional limitations. (*Id*.)

### D. State Agency Reviewing Psychologists Robyn Murry-Hoffman, Ph.D. & Aracelis Rivera, Psy.D.

State agency reviewing psychologist Robyn Murry-Hoffman, Ph.D. noted that Plaintiff has been diagnosed with anxiety, depression, post-traumatic stress disorder, and

8

substance addiction disorders. (Doc. 10-3, PageID 112-13.) State agency reviewing psychologist Aracelis Rivera, Psy.D. noted that Plaintiff has been diagnosed with depressive, bipolar and related disorders; and trauma- and stressor-related disorders. (*Id.* at PageID 145.) Because their opinions are similar, they will be discussed together.

Both reviewing psychologists opined that Plaintiff is moderately limited in her ability to understand and remember detailed instructions, and can understand, remember, and carry out simple 1-3 step tasks. (*Id.*, PageID 117, 149.) They opined that Plaintiff is moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday and workweek. (*Id.*) They concluded that Plaintiff "can carry out simple 1-3 step tasks in which duties are routine and predictable, with no demands for fast pace or high production." (*Id.*) They opined that Plaintiff is moderately limited in her ability to respond appropriately to changes in the work setting, and reiterated that she "can adapt to a setting in which duties are routine and predictable." (*Id.* at PageID 118, 150.)

Both reviewing psychologists limited Plaintiff to occasional interaction with coworkers and supervisors, and no interaction with the general public. (Doc. 10-3, PageID 118, 150.) However, their opinions on Plaintiff's social limitations differed. Whereas Dr. Murry-Hoffman opined that Plaintiff is not significantly limited in her ability to interact appropriate with the general public, Dr. Rivera opined that Plaintiff's ability in this regard is markedly limited. (*Id.*) Similarly, whereas Dr. Murry-Hoffman opined that Plaintiff is not significantly limited in her ability to get along with coworkers

or peers, Dr. Rivera opined that Plaintiff's ability in this regard is moderately limited. (*Id*.) Both psychologists opined that Plaintiff is moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors. (*Id*.) Dr. Murry-Hoffman opined that Plaintiff is moderately limited in her ability to ask simple questions and request assistance, but Dr. Rivera opined that Plaintiff's ability in this regard was not significantly limited. (*Id*.)

> The ALJ gave great weight to the opinions of Drs. Murry-Hoffman and Rivera:
>
> Although neither examining nor treating physicians or mental health providers, these experts are medical doctors and licensed psychologists with knowledge of the Social Security Administration's program and requirements. Their opinions are consistent with the medical evidence of record…. [T]heir analysis and conclusions have been carefully considered and relied upon in formulating a policy compliant functional capacity …. Some of the limitations have been expressed in more vocationally relevant terms.

(Doc. 10-2, PageID 71.)

## V. LAW AND ANALYSIS

Plaintiff contends that the ALJ erred in assessing the medical opinion evidence. Defendant maintains that the ALJ properly weighed the medical opinion evidence. The Court finds that the ALJ complied with the applicable regulations and her decision is supported by substantial evidence. Therefore, the Court affirms the ALJ's decision.

### A. Applicable Law

Because Plaintiff's claim was filed before March 27, 2017, the opinion evidence rules set forth in 20 C.F.R. § 404.1527 apply. These regulations require ALJs to adhere to

10

certain standards when weighing medical opinions. First, the ALJ is required to consider and evaluate every medical opinion in the record. *See* 20 C.F.R. § 404.1527(b), (c). Further, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citations omitted). The regulations define a "treating source" as a claimant's "own acceptable medical source who provides . . . medical treatment or evaluation and who has . . . an ongoing treatment relationship" with a claimant. 20 C.F.R. § 404.1527(a)(2). The "treating physician" rule is straightforward: "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 416.927(c)(2)); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014).

The treating physician rule does not require ALJs to ignore inconsistencies between a treating source's opinion and the evidence in the record. Instead, an ALJ can "properly discount even a treating source opinion if the opinion is unsupported and inconsistent with other substantial evidence in the record." *Herndon v. Comm'r of Soc. Sec.*, Case No. 20-6094, 2021 U.S. App. LEXIS 15178, *15 (6th Cir. May 20, 2021).

If the treating physician's opinion is not controlling, then "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length,

frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson v. Comm'r of Soc. Sec,* 378 F.3d 541, 544 (6th Cir. 2004)).

"Separate from the treating physician rule, but closely related, is the requirement that the ALJ 'always give good reasons' for the weight ascribed to a treating-source opinion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (citing 20 C.F.R. § 404.1527(c)(2); other citation omitted)); *see Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Hargett*, 964 F.3d at 552 (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996))[3]. The goal is to make clear to any subsequent reviewer the weight given and the reasons for giving that weight. (*Id.*) Substantial evidence must support the reasons provided by the ALJ. (*Id.*)

**B.    Analysis**

Plaintiff asserts that the opinion of her treating physician, Dr. Mubarak, was erroneously rejected. (Doc. 11, PageID 723.) She argues that Dr. Mubarak's opinion was well-supported and is not inconsistent with the other medical evidence of record. The

---

[3] Social Security Ruling (SSR) 96-2p has been rescinded. However, this rescission is effective only for claims filed on or after March 27, 2017. *See* SSR 96-2p, 2017 WL 3928298 at *1. Because Plaintiff filed his application for benefits prior to March 27, 2017, SSR 96-2p still applies in this case.

Court finds that the ALJ's decision to reject Dr. Mubarak's opinion complies with the applicable rules and regulations, and is supported by substantial evidence.

The ALJ correctly observed that Dr. Mubarak's opinions were not supported by any objective medical evidence or his own observations. The signs and symptoms that Dr. Mubarak identified in his opinion are absent from his treatment notes. To the contrary, his notes consistently reflect that Plaintiff appeared well and in no acute distress (Doc. 10-7, PageID 478-507; Doc. 10-8, PageID 595-684, 712-17), although he did note on one occasion that Plaintiff was "tearful." (*Id.*, PageID 487.) The ALJ's findings on this issue are supported by substantial evidence.

The ALJ also did not err by relying on Dr. Mubarak's lack of specialization in the area of mental health to give his opinion less weight. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.") Plaintiff argues that as a family physician, Dr. Mubarak handles behavioral sciences as part of his medical specialty. (Doc. 11, PageID 725-26.) But the fact that Dr. Mubarak treats mental health issues as part of his family practice does not make him a specialist in that area. Absent evidence that Dr. Mubarak is a mental health specialist (aside from addiction)—and there is no such evidence in the record—the ALJ's conclusion complies with the applicable regulation (20 C.F.R. § 404.1527(c)(5)) and is supported by substantial evidence.

Plaintiff argues that the ALJ should have given Dr. Mubarak's opinion more weight because his findings were "not inconsistent with those of consultative examiner Mary Ann Jones, Ph.D." (Doc. 11, PageID 724.) Yet, the ALJ declined to afford Dr. Jones' opinions more than "some weight" because those opinions lacked specificity about the nature and severity of Plaintiff's limitations, appeared to be based on her subjective complaints, and were supported by very limited information. (Doc. 10-2, PageID 67-68.) The Court finds that the ALJ's findings are based upon substantial evidence.

Finally, Plaintiff argues that the ALJ erroneously applied more rigorous scrutiny to Dr. Mubarak's opinion than to the opinions of state agency reviewing psychologists Dr. Murry-Hoffman and Dr. Rivera. (Doc. 11, PageID 726 (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).) *Gayheart* noted that "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker," because opinions from treating sources are generally afforded more weight than opinions from non-treating sources. 710 F.3d at 375 (quoting SSR 96-6p, 1996 SSR LEXIS 3, *5 (July 2, 1996)). This proposition is generally true, but ALJs are still permitted to reject treating-source opinions that are unsupported and inconsistent. *Herndon v. Comm'r of Soc. Sec.*, Case No. 20-6094, 2021 U.S. App. LEXIS 15178, *15 (6th Cir. May 20, 2021) (holding that an ALJ can "properly discount even a treating source opinion if the opinion is unsupported and inconsistent with other substantial evidence in the record."). The ALJ's assessment of the opinions of

14

Dr. Murry-Hoffman and Dr. Rivera is supported by substantial evidence and complies

with the applicable regulations, and therefore cannot be reversed by this Court.

## VI.    CONCLUSION

For the reasons discussed above, the ALJ properly applied the governing legal

framework and substantial evidence supports her conclusions. Accordingly, Plaintiff's

Statement of Errors lacks merit.

**IT IS THEREFORE ORDERED THAT:**

1.    Plaintiff's Statement of Errors (Doc. 11) is OVERRULED;

2.    The Court AFFIRMS the Commissioner's non-disability determination; and

3.    The case is terminated on the Court's docket.


*/s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge